# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JAYSON S. BENNETT,**<br><br>Plaintiff,<br><br>vs.<br><br>**JEHOVAH'S WITNESSES, et. al.**<br><br>Defendant. | Case No.: _____<br><br><br>**CIVIL COMPLAINT SEEKING COMPENSATORY RELIEF** |

**JURY TRIAL DEMANDED**

## OUTLINE

**I. PURE BRIEF**

**II. PARTIES OF ACTION**

**III. JURISDICTION AND VENUE OF ACTION**

**IV. FACTS COMMON TO CLAIMS AND DAMAGES**

    In the Beginning
    Teachings and Actions of the Defendant
    Effects of the Defendant's Teachings and Actions on the Plaintiff

**V. CLAIM OF ACTION I - Negligence by a Competent Entity of Authority**

**VI. CLAIM OF ACTION II - Defamation Resulting in the Falsely Claimed Fact**

**VII. CLAIM OF ACTION III - Intentional Infliction of Emotional and Mental Distress**

**VIII. CLAIM OF ACTION IV - Conspiracy to Deprive an Individual of His Civil Rights**

**IX. PRAYER FOR RELIEF**

**X. ATTESTATION**

## I. PURE BRIEF

1. **NOW COMES** Jayson S. Bennett (hereinafter referred to as "the Plaintiff") before this Court *pro se* under 28 U.S.C. § 1654 to lay claim of civil action for judicial relief against Jehovah's Witnesses, et. al. (hereinafter referred to as "the Defendant").

2. The Plaintiff was taken into the care of the Defendant as a child.

3. The Defendant was negligent in their care and duty to the Plaintiff.

4. The Plaintiff was coerced by threat and intimidation to lose all enjoyment, earnings and achievement of life outside of the Defendant's organization.

5. The Defendant acted by politically and religiously motivated conspiracy to deprive the Plaintiff of his civil and natural rights and responsibilities.

6. The Plaintiff developed extreme political and religious beliefs from the teachings and actions of the Defendant.

7. The Defendant intentionally inflicted distress upon the Plaintiff.

8. The Plaintiff suffered catastrophic mental, emotional and social anguish directly caused by his association with and subsequent disassociation from the Defendant.

9. The Defendant published false statements regarding the condition of the Plaintiff.

10. The Plaintiff lost the ability to form any meaningful long-term social relationships outside of the Defendant's organization by the Defendant's teachings and actions.

11. The Plaintiff suffered to the point of insanity and suicide by the Defendant's teachings and actions.

12. The Plaintiff is seeking adjudicated compensatory relief for the injuries to his person and property directly caused by the Defendant's teachings and actions.

## II. PARTIES OF ACTION

13. The Plaintiff is a natural-born-citizen of the United States with lifelong domicile in the State of West Virginia.

14. Upon information and belief, the Defendant is a religious organization with foreign and domestic presence in every state of the United States. The Defendant operates dozens of legal entities in furtherance of its central ideologies, teachings and sincerely held religious beliefs, with each entity performing different functions of the same interests and missions of the Defendant. The principal international, legal and authoritative liable agency and world headquarters for all relevant coordinated activities of such entities of the Defendant conducts business and holds residency at 1 Kings Drive, Tuxedo Park NY 10987.

15. Upon information and belief, the Watch Tower Bible and Tract Society of Pennsylvania is a legal entity formed in 1884 under the laws of the Commonwealth of Pennsylvania. It is the principal formulator of authoritative teachings, media, tracts, documents, bible translations to and of all liable corporations of the Defendant. Its primary place of business and residency is 1 Kings Drive, Tuxedo Park NY 10987.

16. Upon information and belief, the Watchtower Bible and Tract Society of New York, Inc. is a legal entity incorporated in and operating under the laws of the State of New York. This entity of the Defendant is its primary administrator of operations and liquid asset publisher. Its primary place of business and residency is 100 Watchtower Drive, Patterson, NY 12563.

17. The Plaintiff asserts that the publicly available legal information and addresses of the Parties of the Defendant are ambiguous in nature and has provided the legal addresses of the Parties that have given rise to the claims brought forth below to the best of public information.

## III. JURISDICTION AND VENUE OF ACTION

18. This Court exercises original jurisdiction under 28 U.S.C. § 1331 as this pleading of civil action involves the Constitution, laws or treaties of the United States.

19. This Court exercises original jurisdiction under 28 U.S.C. § 1332(a)(1); as (1) the matter in controversy exceeds ($75,000) exclusive of interest and costs; and (2) this pleading of civil action is between two or more citizens of different States.

20. This Court exercises original jurisdiction under 28 U.S.C. § 1343(a)(1),(2) and (4); as (1) damages are sought for the Plaintiff's injuries to person and property due to the willful deprivation of rights and privileges of a citizen of the United States in furtherance of the liable conspiracies mentioned in 42 U.S.C. § 1985(3); (2) damages are sought for the Defendant's aid in injury to the wrongs mentioned in 42 U.S.C. § 1985(3), being reasonably known and with competent power to prevent; and, (3) damages are sought through equitable or other relief under Acts of Congress providing for the protection of civil rights, including the right to vote.

21. This Court is of proper venue pursuant to 28 U.S.C. § 1391(b)(1)(2) and (c)(2); as (1) the Defendant's primary place of business and residency are under this Court's judicial district in the State of New York; (2) a substantial part of the events, property or omissions giving rise to the claim are under this Court's judicial district in the State of New York; and, (3) the Defendant in this civil action is an entity with the capacity to sue and be sued primarily conducting business with residency under this Court's judicial district in the State of New York.

## IV. FACTS COMMON TO CLAIMS AND DAMAGES

### In the Beginning

22. The Defendant is an established religion and organization founded in the 1870's based upon man's interpretations of the Holy Scriptures of Hebrew and Greek original writings.

23. Every local congregation of the Defendant acts in direct concert with and of each party of the Defendant. There is no disparity in the teachings, actions and administrative function between local congregations as they relate to the Defendant.

24. The Plaintiff was born in the State of West Virginia to a family with ties to the teachings and social function of the Defendant and their local congregations. The Defendant regularly attempted to proselytize the Plaintiff's immediate family.

25. The Plaintiff, at a young age most susceptible and important to the development of social integration, psychological function and lifelong worldview, was brought into the care of local congregations of the Defendant where he paid attention as to teachings of an authority.

26. The Defendant held the Plaintiff by position of authority and care irrespective of the Plaintiff's family ties and beliefs, and the Plaintiff believed and was indoctrinated into the Defendant's forms of knowledge and ways of living before the common agreed upon age of willful and competent association and consent.

27. The Plaintiff's involvement and permanent understanding by direct association with the Defendant occurred before the Plaintiff could ever have reasonably been expected to have had any knowledge or understanding of the current social contracts and other ways of living outside of the social interpretations and integrations of the Defendant, the Constitutional right to disengage or discriminate according to one's own disposition, or the personal exercising of the natural and civil rights to life, liberty and the pursuit of happiness.

**Teachings and Actions of the Defendant**

28. The Defendant actively prohibited and deprived the Plaintiff by threat, intimidation and coercion from pursuing all forms of secular activity, achievement and recognition that would not directly correlate with or benefit the Defendant's organization.

29. The Defendant instilled by threat, intimidation and coercion a certain terror upon the Plaintiff to adhere to the Defendant's written standards of secular interpretation regarding a citizen's rights afforded and guaranteed him by Constitution and Federal Law, and the natural rights afforded him by the Laws of Nature and of Nature's God above and within all forms of Government on earth and international ideals of right human living.

30. The Defendant advocated for and taught the Plaintiff about political instability and World War. The Defendant proactively engaged in public and private teaching to the Plaintiff that all Government and any individual or group not a member or unwilling to become a member of the Defendant's organization; local, national or international, are against the common good of the people; and, that they should not be entrusted with the welfare of the Plaintiff as a consensual authority of trust and governance.

31. The Defendant coerced the Plaintiff by threat and intimidation into politically motivated and extreme views that directly negated his ability to exercise his natural and civil rights and to live peacefully with and contribute to the common people and our Governments, primarily by teachings involving the United States of America, the United Kingdom and the United Nations.

32. The Defendant advocated for and taught the Plaintiff about the sufferings and destruction of all people and Governments of earth that are not or will not become members of good standing within their organization.

33. The Defendant, by threat, intimidation and coercion, ensured the Plaintiff that he would suffer the same if he left the Defendant's organization either by choice or by expulsion.

34. The Defendant taught the Plaintiff as a matter of fact that certain great and terrible events of violence are to take place in the near future regarding all false religions - primarily false Christendom - (Catholicism, Protestantism, etc.); and, that other certain events are subsequently to follow in order that God's promises be fulfilled according to the Word of the Holy Scriptures, the class of Anointed Christians caring for the sheep (or genuine and rightly disposed members of the organization) who hold the Heavenly Hope, and the Prophets of Old.

### Effects of the Defendant's Teachings and Actions on the Plaintiff

35. Although the Plaintiff regularly attended meetings of the Defendant in his childhood, his immediate family were not regular members of the organization.

36. This subjected the Plaintiff to the normal functions of common social integrations such as mandatory secular education by departments of state and national regulation.

37. The Plaintiff, having no disability or handicap in the capacity of intelligence or the ability to learn and adapt, suffered greatly with this forced secularization by reason of the Defendant's teachings and actions.

38. The Plaintiff's biological father became a baptized member of the Defendant's organization when the Plaintiff was approximately 12 years old. The Plaintiff's father died when the Plaintiff was approximately 13 years old.

39. The Plaintiff then began to further heed the deeper teachings and actions of the Defendant, particularly about death, life, and the conflict between the Defendant and all forms of secular agency and Government not members of the Defendant.

40. The Plaintiff continued to suffer under lawful secular expectations during his teenage years, experiencing multiple school district transfers in southern West Virginia.

41. The Plaintiff, his immediate family and the departments of state and nation involved with his development and required-by-law social integration underwent extreme stress in trying to deal with the Plaintiff's apparently unknown social problems.

42. The Plaintiff was eventually allowed to withdraw from mandatory education and obtained his General Equivalency Diploma to be able to work.

43. The Plaintiff's experience with secular and normal contractual and regulated work was to the same effect as his education. The Plaintiff believed by the teachings and actions of the Defendant that all forms of monetary system and Government are ultimately futile and to be destroyed despite it being expected and forced on all people with or without consent.

44. The Plaintiff, around the age of 17 and 21, began more formal studies with the Defendant.

45. The Plaintiff became close to his local congregation in southern West Virginia, visiting other congregations and attending conventions of the organization on the East Coast of the United States, becoming baptized as a member of the Defendant's organization.

46. The Plaintiff began to engage in conduct that, despite being secularly encouraged and legal, are forbidden and reproved according to the Defendant's strict adherence to the written administrative procedures of the organization.

47. That conduct led to the Plaintiff being disfellowshipped from the organization.

48. The Plaintiff began researching the Defendant's declarative literature and reference material about the state of being disfellowshipped.

49. The Plaintiff found numerous published articles declaring that those who are disfellowshipped from the Defendant's organization are mentally ill, destined for destruction, and to be brought to shame and sadness by the loss of association with the Defendant's organization.

50. This directly caused the Plaintiff to experience an existential crisis.

51. The Plaintiff began questioning his state of mental health because of the knowledge he had obtained and by way of his social situation regarding his lack of secular integration, achievement and loss of association with the Defendant.

52. The Plaintiff then set out into a non-recognized curriculum of independent education, primarily through the internet, seeking to confirm and consolidate all forms of knowledge, art, international relations, geography, theory, culture, philosophy, politics, military, economics, history, medicine, science, etc., touching upon most aspects of human existence and knowledge, with extensive focus and work in the fields of sociology, religion, psychology and technology, as it relates to the Defendant's teachings and actions.

53. The Plaintiff attempted to join the United States Military in order to find structure and purpose outside of the Defendant's organization, but was refused, despite no lack of intelligence or general aptitude.

54. The Plaintiff was refused from joining the service on account of his failures in school, his lack of recognized personal or national achievement and for being disfellowshipped from the Defendant's organization as showing signs of non-loyalty.

55. The Plaintiff then began to develop actual social and mental illnesses.

56. The Plaintiff continued to engage in international study and work despite being socially and politically ostracized and disenfranchised within the State of West Virginia and the

United States on account of the actions of the Defendant and ways of life and belief the Plaintiff was indoctrinated into at a young age.

57. At this point the Plaintiff was almost completely cut off from normal social function despite forced social contracts and laws and governance, apart from the internet and thought.

58. The Plaintiff began suffering thoughts of suicide around this time.

59. The Plaintiff continued to research more specific forms of debilitating mental illnesses and social meaning, always operating within the Defendant's teachings he had been indoctrinated into at a young age.

60. The Plaintiff began engaging in self-destructive behavior around this time.

61. The Plaintiff began engaging in deviant social behaviors as a result of his political and social isolation, severe mental illnesses, and his loss of means to support himself monetarily.

62. The Plaintiff, around the end of the year 2016, on a night he was about to commit suicide, believed he had nothing left to lose and would engage in behavior out of desperation in his completely isolated social and political surroundings.

63. The Plaintiff did in fact enter the local congregation of the Defendant and proceeded to destroy property in the middle of the night while nobody was there.

64. The State of West Virginia, despite the cooperation and self-incrimination of the Plaintiff from the time of arrest the next morning, at which time he had no working knowledge of the civil rights afforded him by Constitution, State or Federal Law, prosecuted the Plaintiff for this event against the Defendant's request not to press charges or to bring public attention to the matter.

65. The prosecution by the State of West Virginia failed to consider the Plaintiff's specific circumstance of total lack of local and legal social integration, his severe mental and emotional duress, his lack of money or means to support himself or secure competent counsel,

ignored and made false statements as to the Plaintiff's lifelong involvement with the Defendant and violated the Plaintiff's Constitutional rights under U.S. Const. Amends. V, VIII and XIV as it relates to the injuries suffered by the Plaintiff, by the Defendant.

66. The Plaintiff was not in a competent state of mind, was suffering immense psychological and emotional duress and anguish, was socially isolated and completely deprived and ignorant of his Constitutional rights by the teachings and actions of the Defendant.

67. The Plaintiff's conviction as a Felon made him suffer more severe mental and social illnesses regarding the Plaintiff's lifelong association with the Defendant and his complete loss of civil rights, social secular integration and recognized achievement.

68. The Plaintiff continued his independent study and work outside of all state and monetary regulation without a single form of compensation as it related to the Defendant's teachings and ways of life he was indoctrinated into at a young age and the social and mental illnesses he was suffering from the injuries directly caused by the Defendant.

69. The Plaintiff's study and work he conducted as a direct consequence of his understanding by the Defendant's actions and teachings inadvertently caused the Plaintiff to come to and create certain information and mass keyword indicators that led to his being personally surveilled by national and civil authorities early in his life while being completely independent from all forms of accountable Government, monetary interests and civil agency.

70. The Plaintiff's more advanced study and work primarily consisted of sensitive matters of international security and intelligence, natural language processing, artificial intelligence, theoretical technological research and development, search engine optimization, the consolidation and categorization of public information, the internet of things, international relations, political science, state-sanctioned and civil mass surveillance, and media propagation.

71. The Plaintiff's awareness of being under a constant state of surveillance despite having no social or local integration or privileges of the natural and civil rights afforded and guaranteed to him caused the Plaintiff to engage in behaviors he would never had done had he not been under surveillance and the suspicion of terrorist, criminal and extremist activity as it directly related to the Defendant's teachings that the Plaintiff was indoctrinated into before the common agreed upon age of willful and competent consent and association.

72. The Plaintiff has recently been brought to an understanding and realization of the seriousness of the matter, the injuries caused, where they rooted from, and the civil and natural rights and responsibilities that form the basis of all Justice and Order.

## V. CLAIM OF ACTION I

**Negligence by a Competent Entity of Authority held in Trust**

73. All allegations stated above are incorporated by reference herein as though the same were set forth in their entirety.

74. Where the Plaintiff's assumption of risk was not duly known to or established with the Defendant before an age of willful consent, where the Defendant owed the Plaintiff a level of duty and care commonly expected and agreed upon by reasonable society, and the Defendant breached that duty and care by engaging in reckless and uncommon teachings and actions, the Plaintiff seeks recovery for the damages to his person and property caused by such negligence.

75. The Defendant, acting with competent knowledge and by matter of authority, having in care the Plaintiff at a young age when lifelong worldviews, psychological development and social integrations are most developed, did act in a negligent manner that resulted in the Plaintiff's loss of potential of earnings and achievement outside of the Defendant's organization.

76. The Defendant, acting with competent knowledge and by matter of authority, having in care the Plaintiff at a young age when lifelong worldviews, psychological development and social integrations are most developed, did act in a negligent manner that resulted in the Plaintiff's constant state of social, emotional, spiritual and ideological conflict with himself, the United Nations, the United States of America, the State of West Virginia and the common religious organizations and social surroundings outside of the Defendant's organization.

77. By that, in the teachings given and ways of life permanently ingrained into the Plaintiff by the Defendant, the Defendant had full competent understanding of what injuries could or might have occurred to the Plaintiff before the Plaintiff's ability to naturally choose association or belief had developed.

78. The Plaintiff suffered extraordinary and catastrophic socio-economic injuries and emotional and mental anguish by the negligence of the Defendant.

79. The injuries suffered to the Plaintiff by the Defendant's negligence to his person and property provide a claim for which relief may be sought.

## VI. CLAIM OF ACTION II

### Defamation Resulting in the Falsely Claimed Fact

80. All allegations stated above are incorporated by reference herein as though the same were set forth in their entirety.

81. The Defendant, acting with competent knowledge and by matter of authority, did in fact falsely and maliciously publish without scientific evidence that those who are disfellowshipped from the Defendant's organization are mentally ill.

82. The Defendant's intentional declaration as by fact that the above statement is true caused the Plaintiff to question his own state of mental health by his being disfellowshipped from the Defendant's organization, to subsequently develop severe mental illnesses, cause him immense emotional and mental pain and suffering, public shame, and the loss of all social meaning and enjoyment of life outside of the Defendant's organization.

83. The injuries suffered to the Plaintiff by the Defendant's malicious and intentional libel provides a claim for which relief may be sought.

## VII. CLAIM OF ACTION III

**Intentional Infliction of Emotional and Mental Distress**

84. All allegations stated above are incorporated by reference herein as though the same were set forth in their entirety.

85. The Defendant did act in an intentional and malicious manner to inflict emotional and mental distress upon the Plaintiff by way of loss of lifelong association with the Defendant's organization, and by the extreme political and religious actions, coercions, intimidations and threats made against the Plaintiff since childhood.

86. The Defendant did act in a malicious and intentional manner that could have been and was expected to inflict extraordinary and catastrophic emotional and mental distress upon the Plaintiff, and result in his loss and non-enjoyment of all pursuits outside of the Defendant's organization.

87. The injuries suffered by the Plaintiff from a young age and into the foreseeable future provides for the Plaintiff to lay claim for the recovery of damages caused by such extreme

and constant emotional and mental distress intentionally and maliciously inflicted on the Plaintiff by the Defendant.

## VIII. CLAIM OF ACTION IV

**Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. § 1985(3)**

88. All allegations stated above are incorporated by reference herein as though the same were set forth in their entirety.

89. In violation of 42 U.S.C. § 1985(3), the Defendant, by way of two or more persons, did conspire for the purpose of depriving the Plaintiff of the equal protection of laws, equal privileges and immunities guaranteed by law and Constitution of the United States.

90. In violation of 42 U.S.C. § 1985(3), the Defendant, by way of two or more persons, did act by intimidation and threat to prevent the Plaintiff who was lawfully entitled to vote by Acts of Congress and as a natural-born-citizen of the United States, being guaranteed and protected by the laws thereof, from giving his support or advocacy in a legal manner.

91. Since, therefore, the Defendant, by way of two or more persons, did in fact cause and cause to be done such acts in furtherance of the conspiracies set forth in 42 U.S.C. § 1985(3), where the Plaintiff suffered injury to his person and property and was deprived of having and exercising the rights and privileges of a citizen of the United States, the Plaintiff lays claim for the recovery of damages caused by such injury and deprivation.

# IX. PRAYER FOR RELIEF

**THE PLAINTIFF**, having brought forth before this Court the facts and claims that entitle him to pursue legal remedy through suit in this jurisdiction and venue by law of the United States, the State of New York and the common law, where the Plaintiff asserts that he did not reasonably know or was caused to know of the extent of his injuries caused by the Defendant, his loss of civil and natural rights by the Defendant's actions and his suffering state of mind until the year of 2022, respectfully demands that this Court order compensatory relief by general damages against the Defendant in favor of the Plaintiff:

    A.    for the extraordinary and catastrophic emotional and mental anguish the Plaintiff has suffered since childhood due to the causes of action brought forth above;

    B.    for the Plaintiff's loss and non-enjoyment of all social and legal privileges and responsibilities afforded and guaranteed by the laws of the United States, including the right to exercise public office, the right to provide legal support and advocacy, and his coerced total social and political isolation by way of the causes of action brought forth above;

    C.    and, for the intentional threats, intimidations and coercions of the Defendant made against the Plaintiff, causing him to suffer the complete loss of all secular and legal compensation for the study and work he has achieved and could have achieved through his natural physiology and hard-earned levels of emotional and intelligence quotient, experience and knowledge, directly deprived and damaged by the constant emotional, mental and social illnesses and anguish he has suffered by way of the causes of action brought forth above,

in the circumstantially reasonable and calculated amount of Two Hundred and Sixty-Three Million U.S. Dollars ($263,000,000).

## X. ATTESTATION

The Plaintiff certifies to the best of his knowledge, information, and belief that; (1) this complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

The Plaintiff demands a trial by jury pursuant to the Seventh Amendment to the United States Constitution and Rule 38 (b)(1) of the Federal Rules of Civil Procedure after the Parties have had sufficient time to conduct discovery by deposition, interrogatories, and exhibits.

The Plaintiff attests that he has plead the facts and claims of this action in a manner consistent with notice pleading by providing the provable allegations that give rise to the action.

The Plaintiff further attests to this Court that the civil action is not seeking injunction regarding the Defendant's sincerely held religious beliefs and practices; but is a suit for legal relief by monetary compensation for the injuries suffered to the person and property of the Plaintiff by the Defendant's actions brought forth above that are legally liable, and by which provide a valid and legal basis for the recovery of such general damages.

Plaintiff *pro se*
Tel: (540)-746-0467
6532 Beech Run Rd.
Jumping Branch, W.V. 25969

/s/ *Jayson S. Bennett*